**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

CHRISTOPHER SEAN MADISON,

Defendant.

Criminal Action No. 24-440 (CKK)

**MEMORANDUM OPINION & ORDER**
(January 23, 2025)

**I.**

The Government charged Defendant Christopher Sean Madison by information with five misdemeanor counts for his alleged conduct during the riot at the United States Capitol on January 6, 2021:

- Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1);

- Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);

- Entering and Remaining in Certain Rooms in the Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(C);

- Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and

- Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

*See* Information, ECF No. 5. Madison pled guilty to two of these charges: Disorderly Conduct in a Capitol Building or Grounds, and Parading, Demonstrating, or Picketing in a Capitol Building. *See* Plea Agreement, ECF No. 23; Statement of Offense, ECF No. 24.

As part of his plea agreement with the Government, Madison stipulated to a statement of facts that he agreed, if his case had proceeded to trial, the Government would have been able to

1

prove beyond a reasonable doubt.  *See* Statement of Offense, ECF No. 24.  In summary, that statement describes Madison's role in the riot on January 6 as follows.

Madison traveled from his home in Florida to Washington, D.C., where he attended the "Stop the Steal" rally hosted by President Donald J. Trump and later participated in the riot at the U.S. Capitol Building.  *Id.* ¶¶ 8–9.  Madison was among the first rioters who unlawfully entered the Capitol Building through the Senate Wing Doors.  *Id.* ¶¶ 9–10.  From there, he walked to the Crypt, where rioters met a line of police officers attempting to stop them from proceeding further into the Capitol.  *Id.* ¶ 11.  The rioters eventually overwhelmed the outnumbered officers and pushed past them.  *Id.*  After moving through the Crypt, Madison walked through the Rotunda and Statuary Hall.  *Id.* ¶ 12.  He was later captured on camera walking through several office areas reserved for members of Congress, including an office of former Speaker of the House Nancy Pelosi.  *Id.* ¶ 13.  Madison left the Capitol Building through the Rotunda doors at approximately 2:46 p.m., after having been inside for approximately 33 minutes.  *See id.* ¶¶ 10, 13.

On June 13, 2025, Madison is scheduled to be sentenced for the two misdemeanor offenses for which he has accepted responsibility.  Min. Entry (Jan. 3, 2025).

**II.**

On January 21, 2025, the Government moved to dismiss the information against Madison "with prejudice" under Federal Rule of Criminal Procedure 48(a).  Gov't's Mot. to Dismiss, ECF No. 26.  Madison does not object to the relief requested in this motion.  *See* Def.'s Notice of No Objection to Dismissal with Prejudice, ECF No. 27.  As the "reason for this dismissal," the Government cites an as-yet unnumbered presidential Proclamation titled "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021."  Gov't's Mot. to Dismiss at 1.  That Proclamation, in relevant part,

"direct[s] the Attorney General to pursue dismissal with prejudice to the Government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." Unnumbered Proclamation, __ Fed. Reg. ____ (Jan. 20, 2025), https://perma.cc/W4NT-4K4S.

By its terms, Rule 48(a) allows the Government, "with leave of court" to "dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a). It does not explicitly grant either the Government or the trial court the authority to vacate or set aside a plea of guilty, a jury verdict, or a court's findings of fact and conclusions of law following a bench trial. *See id.*; *see also United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006) (noting that "both the text of [Rule 48] and its roots in the common law doctrine of *nolle prosequi* cast doubt on Rule 48's applicability post-conviction" without deciding whether Rule 48 "can properly be used to vacate a final conviction"); *Rice v. Rivera*, 617 F.3d 802, 810 (4th Cir. 2010) (questioning whether Rule 48 allows dismissal following "conviction and unsuccessful direct appeal" without resolving whether dismissal under Rule 48 was proper under those circumstances).

However, the U.S. Court of Appeals for the D.C. Circuit has indicated in dicta that the Government may seek dismissal of criminal charges under Rule 48(a) at least until a judgment becomes final on direct appeal. *See United States v. Knight*, 981 F.3d 1095, 1109 (D.C. Cir. 2020) (citing *Rinaldi v. United States*, 434 U.S. 22 (1977)); *see also Smith*, 467 F.3d at 788–89 (concluding that trial courts have jurisdiction to entertain Rule 48 motions "after sentencing and appeal"); *cf. Hirabayashi v. United States*, 828 F.2d 591, 607 (9th Cir. 1987) ("There is no precedent for applying Rule 48 to vacate a conviction after the trial and appellate proceedings have ended."). It follows that the Government may also seek dismissal under Rule 48(a) before the trial court has sentenced the defendant. Consistent with that conclusion, courts in this District have

3

granted Rule 48(a) motions filed after trial but before sentencing. *See, e.g.*, *United States v. Venkata*, 709 F. Supp. 3d 9, 19 (D.D.C. 2024) (RDM); *United States v. Purdy*, No. 22-cr-19-1, 2025 WL 219111, at *2 (D.D.C. Jan. 14, 2025) (RCL).

Upon consideration of the relevant authority, this Court agrees that Rule 48(a) is a proper vehicle for dismissal of a criminal case "with leave of the court" before sentencing. The Court must therefore consider whether to grant its leave to dismiss this case. *See United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) (noting that the "requirement of judicial leave" in Rule 48 "gives the court a role in dismissals following indictment," even when "the defendant concurs in this dismissal"); *United States v. Flynn*, 507 F. Supp. 3d 116, 126–31 (D.D.C. 2020) (EGS) (analyzing the scope of a trial court's discretion under Rule 48(a)); *see also Rinaldi*, 434 U.S. at 30 n.15 (noting that Rule 48 "obviously vest[s] some discretion in the court" without deciding whether that discretion extends to cases in which the defendant consents to dismissal). To inform this analysis, the Court may "require a statement of reasons and underlying factual basis" for the Government's motion to dismiss. *See Ammidown*, 497 F.2d at 620.

Here, the Government's only stated reason for pursuing dismissal with prejudice is that the President has ordered the Attorney General to do so. *See* Gov't's Mot. (citing Unnumbered Proclamation, __ Fed. Reg. ____ (Jan. 20, 2025), https://perma.cc/W4NT-4K4S). The Court does not discern—and neither party has identified—any defect in either the legal merits of, or the factual basis for, the Government's case that would require dismissal. But recognizing that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," the Court shall not require a further explanation here. *See United States v. Nixon*, 418 U.S. 683, 693 (1974).

### III.

Dismissals of charges, pardons after convictions, and commutations of sentences will not change the truth of what happened on January 6, 2021. What occurred that day is preserved for the future through thousands of contemporaneous videos, transcripts of trials, jury verdicts, and judicial opinions analyzing and recounting the evidence through a neutral lens. Those records are immutable and represent the truth, no matter how the events of January 6 are described by those charged or their allies.

What role law enforcement played that day and the heroism of each officer who responded also cannot be altered or ignored. Present that day were police officers from the U.S. Capitol Police and those who came to their aid when called: the D.C. Metropolitan Police Department, Montgomery County Police Department, Prince George's County Police Department, Arlington County Police Department, and Fairfax County Police Department. Grossly outnumbered, those law enforcement officers acted valiantly to protect the Members of Congress, their staff, the Vice President and his family, the integrity of the Capitol grounds, and the Capitol Building—our symbol of liberty and a symbol of democratic rule around the world. For hours, those officers were aggressively confronted and violently assaulted. More than 140 officers were injured. Others tragically passed away as a result of the events of that day. But law enforcement did not falter. Standing with bear spray streaming down their faces, those officers carried out their duty to protect.

All of what I have described has been recorded for posterity, ensuring that what transpired on January 6, 2021 can be judged accurately in the future.

\*   \*   \*

## IV.

For the foregoing reasons, it is hereby **ORDERED** that:

- The Government's [26] Motion to Dismiss is **GRANTED**;

- The [5] Information is **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Criminal Procedure 48(a);

- The [12] Order Setting Conditions of Release is **VACATED**;

- All scheduled proceedings and deadlines in this matter, including the Sentencing Hearing scheduled to take place on June 13, 2025, and the associated deadlines for Memoranda in Aid of Sentencing, are **VACATED**; and

- All pending motions are **DENIED AS MOOT**.

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: January 23, 2025

                                                     COLLEEN KOLLAR-KOTELLY
                                                     United States District Judge